Alphonso ROUNSAVILLE, Appellant,

v.

H.Q. EVATT, Sheriff of Hamilton County, Tennessee, Appellee.

Supreme Court of Tennessee, at Knoxville.

June 29, 1987.

Hugh J. Moore, Jr. and Kenneth C. Beckman, Witt, Gaither & Whitaker and William B. Mitchell Carter, Chattanooga, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, and Jane W. Young, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Justice.

The issue in this post-conviction proceeding is whether it is fatal to the validity of a guilty plea for the trial judge to fail to advise a defendant, in open court, of the constitutional right against self-incrimination.

Defendant initiated this proceeding on 7 April 1984, seeking to set aside guilty pleas to eight charges of forgery and one of receiving stolen property, entered on 23 September 1981 in the same trial court. Defendant asserted that the failure of the trial judge to advise him of his constitutional right against self-incrimination rendered the convictions on those guilty pleas void.

The transcript of the 1981 hearing reveals that, when defendant's motion to waive jury trial and enter guilty pleas was called, defendant, although represented by a court-appointed lawyer who was present, was allowed to address the court. He stated that he wanted to hire a lawyer "to have his case looked into deeper" because "I am being convicted of something that I didn't do."

After a brief colloquy wherein defendant indicated dissatisfaction with his court appointed lawyer, the trial judge gave him until 12 October to get his own lawyer and informed him that, after he employed a lawyer, a trial date satisfactory to defendant and his lawyer would be selected. Court recessed; but upon its resuming the same day, the State announced that defendant wished to enter guilty pleas. The prosecuting attorney explained to the court that defendant had passed eight checks to various business establishments in Hamilton County at various times over a period of approximately thirty days. The checks had been stolen from one Gary Turbeck and were taken from an automobile. Defendant had been charged with burglary of the checks; but upon his insistence that he had found the checks, the State moved to amend that indictment to charge the offense of receiving stolen property. This motion was granted. Defendant then pled

guilty to eight counts of forgery and one count of receiving stolen property.

Two documents were presented to the trial judge. The first a "PETITION TO ENTER PLEA OF GUILTY," signed by defendant Alphonso Rounsaville, acknowledged that his court-appointed attorney had advised him and that he understood the charges and the possible punishment and that defendant had been advised of the constitutional rights to counsel at all stages of the proceedings, to trial by jury, to confront the witnesses against him, and to compel the production of evidence and the attendance of witnesses. The petition, which appears to be a form, contains a number of additional recitations of the defendant, whose signature appears thereon; but it does not contain any reference whatsoever to the constitutional right against self-incrimination. Parenthetically, the form petition also does not contain any representation that defendant, who had a prior criminal record, had been warned that, upon pleading guilty, evidence of any prior convictions could be admitted for consideration by the judge in determining punishment. Defendant has not raised the issue of the omission of the warning regarding prior convictions, but that requirement was made mandatory in *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977).

The second document submitted to the trial judge at the September 1981 hearing was entitled "CERTIFICATE OF COUNSEL." It was signed by defendant's court-appointed attorney. In it he represented to the court that he had fully explained to defendant the offenses with which defendant was charged, that to the best of his knowledge and belief each of the statements and representations in the petition signed by defendant were true and accurate in all respects and that defendant's waiver of "all reading of the indictment in open court, and of all further proceedings upon arraignment is voluntarily and understandingly made."

The trial judge then conducted a brief interrogation of defendant wherein it was revealed that defendant was twenty-three-years-old, had a twelfth grade education, was a cement mason, could read and write, and had read the petition that he had signed. The court inquired, "[You] say you want to give up a jury trial and that you are guilty and you want to plead guilty to these cases. Is that what you are now telling me?" Defendant was next asked if, notwithstanding his earlier request for another lawyer, he was "at this time" satisfied with the work of his court-appointed attorney. Defendant responded in the affirmative.

The foregoing was the entire substance of the open court proceedings between the trial judge and defendant.

The trial judge found that "the 'Petition To Enter Plea Of Guilty' appears to have advised petitioner of all of his constitutional rights, except the right against self-incrimination." But in spite of that omission, the trial judge found that the questions asked by the trial judge who conducted the September 1981 hearing were sufficient to support a finding that defendant knowingly and voluntarily entered the pleas of guilty.

The Court of Criminal Appeals noted that defendant had a criminal record of some magnitude and was "no stranger to criminal proceedings." That court was evidently implying, on a silent record, that defendant knew all about the constitutional right against self-incrimination. That court also quoted a passage from *State v. Teague*, 680 S.W.2d 785 (Tenn.1984), with the comment that the principle expounded in *Teague* was applicable to the instant case. To lend any support to the intermediate court's reliance upon *Teague* as justifying the result it reached, *Teague* would necessarily have to be construed as overruling *State v. Mackey, supra,* and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

In *Teague*, a first degree murder case, the State relied at the sentencing phase upon a prior conviction of a felony involving the threat of violence to the person as one of two aggravating circumstances. Defendant launched a collateral attack on that conviction, which was based upon a plea of *nolo contendere*, on the ground that the trial judge accepting his plea did

not follow exactly the mandates of Rule 11, T.R.Crim.P. Defendant had failed to raise that issue at the trial of the murder case.

Nothing said by this Court in *Teague* in disposing of that issue altered or modified in any respect the mandates of *Mackey.*

In the instant case, the trial judge failed to comply with the mandate of *Mackey,* in that he did not "address the defendant personally in open court and inform him of and determine that he understands" all of the significant consequences of a guilty plea and the constitutional rights that he was waiving. These were expressly set forth in *Mackey* as follows:

(1) The nature of the charge to which the plea is offered, and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and, if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea; and

(2) If the defendant is not represented by an attorney, that he has a right to be represented by an attorney at every stage of the proceeding against him, and if necessary, one will be appointed to represent him; and

(3) That he has a right to plead not guilty or to persist in that plea if it has already been made, and, that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) That if he pleads guilty, there will not be a further trial of any kind except to determine the sentence so that by pleading guilty he waives the right to a trial; and

(5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement, and, further, that, upon the sentencing hearing, evidence of any prior convictions may be presented to the judge or jury for their consideration in determining punishment.

553 S.W.2d at 341.

In three paragraphs that immediately follow the above quote, additional prerequisites that must be accomplished by the trial judge "in open court" are specified. The requirement that all of these matters be expressly covered by the trial judge in open court, and that the verbatim record affirmatively so show, cannot be satisfied by the use of a form, no matter how complete, and an abbreviated inquiry by the trial judge in open court, that defendant understands the matters covered therein.

On this record, the conclusion is inescapable that at no time did defendant's lawyer or the trial judge advise defendant of his constitutional right not to be a witness against himself and ascertain whether or not he fully understood the consequences of a waiver of that right.

In *Boykin,* the United States Supreme Court required that a defendant be warned of his constitutional rights to trial by jury, to the right of confrontation, and to protection against self-incrimination as mandatory prerequisites to the finding that a guilty plea was "intelligent and voluntary." The Court further required an affirmative showing of such warnings and admonished that such important constitutional rights could not be presumed from a silent record.

This Court warned in *Mackey* that we were mandating stricter standards than those required in *Boykin.*

It is the intention of this Court that the mandates of *Mackey* be fully complied with as a prerequisite to the acceptance of a valid guilty plea. In this connection we observe that the body of Rule 11, T.R. Crim.P., does not contain all of the mandates of *Mackey.* The comments to that rule warn that *Mackey* contains additional requirements. We reiterate that *Mackey* controls the acceptance of guilty pleas.

In this case, we find that the trial judge's failure to address defendant personally in open court and inform him of the constitutional privilege against self-incrimination and ascertain that he fully understood the significance of his waiver of that right was an error of constitutional proportion and requires that the guilty pleas and convictions thereon be set aside as void.

The judgment of the trial court and the Court of Criminal Appeals are reversed and this case is remanded to the trial court for the trial of defendant upon the indictments involved in this proceeding, or other proceedings according to law. Costs are adjudged against the State.

BROCK, C.J., HARBISON and DROWOTA, JJ., and FRANKS, Special Justice, concur.