IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 1, 2006 Session

## LOUIS STEELE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 04-04089     James C. Beasley, Jr., Judge**

**No. W2005-02480-CCA-R3-PC  - Filed November 15, 2006**

The Appellant, Louis Steele, appeals the dismissal of his petition for post-conviction relief by the Shelby County Criminal Court. Steele pled guilty to misdemeanor vandalism, harassment, and three counts of driving under the influence (DUI). On appeal, Steele contends that his pleas were not knowingly and voluntarily entered due to trial counsel's ineffectiveness in: (1) failing to inform him of the consequences of his pleas, specifically that three DUI convictions automatically qualified him as a Motor Vehicle Habitual Offender; (2) failing to seek court-ordered medical treatment while he was in jail or to pursue his release on bail; and (3) failing to properly conduct a pretrial investigation. Following review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

André C. Wharton, Memphis, Tennessee, for the Appellant, Louis Steele.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Scott Bearup, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Procedural History

The Appellant collaterally challenges five convictions stemming from four separate indictments. The first indictment was returned on December 17, 2002, and charged the Appellant with DUI and reckless driving. The second indictment, returned February 11, 2003, charged the Appellant with harassment and misdemeanor vandalism. The third indictment, returned June 10, 2004, and the fourth indictment, returned September 11, 2003, each charged DUI and reckless driving. Under the terms of the plea agreement, the Appellant entered *Alford* guilty pleas to three counts of DUI and single counts of harassment and vandalism. *See North Carolina v. Alford*, 400

U.S. 25, 37-38, 91 S. Ct. 160, 167-68 (1970). The reckless driving charges were dismissed. As provided by the plea agreement, the Appellant was sentenced to: (1) eleven months and twenty-nine days, with service of thirty days in confinement, for each DUI conviction; (2) eleven months and twenty-nine days for vandalism, with service of thirty days in confinement; and (3) thirty days confinement for harassment. All sentences were ordered to be served concurrently. Based upon pretrial jail credit, the Appellant was released from custody upon entry of the pleas. Shortly thereafter, the Appellant received notice of the State's petition to declare him a Motor Vehicle Habitual Offender. On February 25, 2005, the Appellant filed a *pro se* petition for post-conviction relief alleging ineffective assistance of counsel and that his guilty pleas were involuntarily entered. An evidentiary hearing was held on August 25, 2005, at which the Appellant, his brother, and trial counsel were called as witnesses.

According to the Appellant, neither of his attorneys[1] ever explained or reviewed the State's evidence with him, nor was he ever shown the videotapes of his field sobriety tests, despite multiple requests to view them. However, he acknowledged that he was aware that some of the tapes had been destroyed. The Appellant also testified that he suffered from severe hip problems and was in tremendous pain during his incarceration in the jail. The Appellant testified that while incarcerated, he was not given his prescription pain medication. According to the Appellant, he informed trial counsel of this fact, prior to the entry of the pleas, and no action was taken by counsel to ensure proper treatment. Moreover, trial counsel did not attempt to obtain a bond reinstatement in order to secure outside medical treatment. The Appellant stated that trial counsel merely told him to plead guilty so that he could get out of jail and then deal with his medical problems on the outside. The Appellant further testified that, although he was advised by the trial court of the future consequences of pleading guilty to the charged crimes, he was never advised that entering the pleas would immediately qualify him as a Motor Vehicle Habitual Offender. The Appellant testified that he pled guilty only because he needed a hip replacement operation and that he was actually innocent of the DUI charges. He further acknowledged that three of his cases had been set for trial on at least three occasions and, on each occasion, his attorney had been prepared to proceed to trial.

Trial counsel, who represented the Appellant at the guilty plea hearing, testified that, in his opinion, the Appellant had a good chance of being acquitted on two or three of the DUI's based upon the State's lack of evidence. He further testified that he informed the Appellant of this fact. He also informed the Appellant that the State had lost some of the videotapes of his field sobriety tests. According to counsel, he never advised the Appellant to plead guilty. Trial counsel stated that the Appellant informed him that he wanted to get out of jail so that he could have hip replacement surgery. Accordingly, trial counsel stated that the Appellant's guilty pleas were entered pursuant to *Alford v. North Carolina*. Trial counsel acknowledged that he did not advise the Appellant that the three DUI guilty pleas qualified him as a Motor Vehicle Habitual Offender.

---

[1]Testimony indicated that the Appellant was represented by retained counsel at all general sessions level hearings; however, following his indictments in the criminal court, he was represented by an assistant public defender. Although appointed counsel was instrumental in negotiating the plea agreement, the Appellant was represented by initial counsel at the guilty plea hearing.

On September 22, 2005, the post-conviction court entered an order denying relief. This timely appeal followed.

**Analysis**

On appeal, the Appellant asserts that he was denied the effective assistance of counsel, and, as a result, his guilty pleas were not knowingly and voluntarily entered. In order to succeed on a post-conviction claim, the Appellant bears the burden of showing, by clear and convincing evidence, the allegations set forth in his petition. T.C.A. § 40-30-110(f) (2003). The Appellant's claim of ineffective assistance of counsel stems from the following allegations: (1) that trial counsel and the trial court failed to inform him of the consequences of entering the best interest guilty pleas to three charges of DUI, which automatically qualified him as a Motor Vehicle Habitual Offender; (2) that trial counsel failed to inquire about possible medical treatment while in confinement or seek reinstatement of the Appellant's bond so the Appellant could receive treatment while awaiting trial; and (3) that trial counsel failed to investigate the facts of each case and the State's evidence.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. at 164. In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985) (citing *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. at 164).

To succeed in a challenge for ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1)

deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the Appellant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S. Ct. at 370; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This defense to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law* are reviewed under a purely *de novo* standard with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## I. Consequences of the Guilty Pleas

The Appellant contends that trial counsel, as well as the trial court, failed to inform him that by pleading guilty to three counts of DUI, he would automatically qualify as a Motor Vehicle Habitual Offender. In denying relief on this issue, the post-conviction court found that the "status of motor vehicle habitual offender, is a civil statute[,] not a criminal enhancement." The court further concluded:

> The civil status of driving is not a right. . . . That is a privilege that is provided by our legislature. It is not a right.
>
> . . . .
>
> It does not carry any jail time. It does not carry any fines. It does not carry any kind of punishment other than you cannot drive. And you cannot drive, again, is not a right. It's a privilege.

Additionally, the post-conviction court noted that the Appellant was advised at the guilty plea hearing that his convictions could be used to enhance any future punishments as required by law. *See* Tenn. R. Crim. P. (b)(1); *see also State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977).

### a. Trial Court's Failure to Inform of Consequences

It is fundamental that relief may be granted on a post-conviction petition only when the sentence or conviction abridges a state or federal constitutional right of the defendant. T.C.A. § 40-30-103 (2003); *Overton v. State*, 874 S.W.2d 6, 12 (Tenn. 1994). A requirement within the guilty plea litany which exceeds the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709 (1969), is not a constitutional violation, and, as such, does not constitute a ground for post-conviction relief.[2] *Housler v. State*, 749 S.W.2d 758, 760 (Tenn. Crim. App. 1988). Advice to a defendant entering a guilty plea that prior convictions might be used to enhance his sentence is not constitutionally required; thus, this omission has no validity in a post-conviction proceeding. *State v. Prince*, 781 S.W.2d 846, 853 (Tenn. 1989). Likewise, the omission of a trial court to advise a defendant with regard to a possible civil penalty is equally without constitutional foundation.

#### b. Trial Counsel's Failure to Inform of Consequences

In support of his claim of trial counsel's ineffectiveness, the Appellant relies upon *R. L. Seaton v. State*, No. 03C01-9305-CR-0014 (Tenn. Crim. App. at Knoxville, Sept. 13, 1994), as authority. This reliance is misplaced as the two cases are factually distinguishable. In *Seaton*, a panel of this court affirmed the trial court's grant of post-conviction relief following guilty pleas to two counts of violation of the Motor Vehicle Habitual Offender Act based upon the petitioner's confusion as to "whether the petitioner entered the last plea with the understanding that he had the option to try to set aside the civil judgment at a later date . . . or to waive any possible subsequent challenge."

The Appellant cites to no authority, nor are we aware of any, which requires trial counsel to advise a defendant of civil penalties or civil actions which could potentially arise as collateral consequences of the guilty plea. To do so would require an endless discussion between counsel and the client of potential consequences. As observed by the post-conviction court, if such requirement existed, failure to advise a defendant prior to his pleading guilty that an increase in an automobile insurance premium is likely could conceivably support a claim for post-conviction relief. We hold such advice is not required, as it is not within the range of competency demanded of attorneys in criminal cases. *See Baxter v. Rose*, 523 S.W.2d at 936. Accordingly, we conclude that the Appellant's argument that trial counsel's failure to advise him that his DUI convictions qualified him as a Motor Vehicle Habitual Offender is without merit.

#### c. Involuntariness of Guilty Pleas

Next, the Appellant argues that his guilty pleas were involuntarily entered because he was unaware of the consequences of the pleas. This argument is similarly misplaced. A defendant's plea of guilty constitutes an admission in open court that the defendant committed the acts charged in the indictment. *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468 (1970). The plea, however, is more than an admission; it is the defendant's consent that judgment of conviction may

---

[2] As observed by the United States Supreme Court in *Boykin*, a guilty plea implicates waiver of the defendant's constitutional rights (1) against compulsory self-incrimination; (2) to a trial by jury; and (3) to confront his accusers.

be entered without a trial. *Id.*, 90 S. Ct. at 1469. A defendant's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than simply lip service. Indeed, the defendant's sworn statements and admissions of guilt stand as witness against the defendant at the post-conviction hearing when the defendant disavows those statements.

In *United States v. Broce*, 488 U.S. 563, 573, 109 S. Ct. 757, 765 (1989), the Supreme Court held:

> Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense [or each collateral consequence] relinquished by a plea of guilty. Waiver in that sense is not required.
>
> . . . .
>
> Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty. The trial court complied with Rule 11 in ensuring that respondents were advised that, in pleading guilty, they were admitting guilt and waiving the right to a trial of any kind. . . .

*See also Tollett v. Henderson*, 411 U. S. 258, 267, 93 S. Ct. 1602, 1608 (1973) (failure of trial counsel to correctly appraise the constitutional significance, in retrospect, of certain historical facts is insufficient to set aside an otherwise valid guilty plea); *Brady*, 397 U.S. at 757, 90 S. Ct. at 1473 (1970) (a guilty plea is not rendered invalid because the defendant misapprehended the penalties attached to alternative courses of action); *McMann v. Richardson*, 397 U. S. 759, 770-71, 90 S. Ct. 1441, 1448-49 (1970) (a counseled defendant may not make a collateral attack on a guilty plea upon the ground that he misjudged the admissibility of his confession). Accordingly, we conclude that the Appellant's challenge to the voluntariness of his guilty pleas is without merit.

## II. Medical Treatment

Second, the Appellant asserts that trial counsel was ineffective in failing "to file or research appropriate motions" to obtain medical treatment while the Appellant was incarcerated or to attempt to have the Appellant's bond reinstated so that he could obtain medical treatment. According to the Appellant, his lack of medical treatment was his primary motivation in accepting the plea agreement and that if medical treatment had been provided, he would have proceeded to trial.

Proof of deficient performance based upon an allegation that trial counsel failed to perform requires more than merely a bald assertion of some lost potential benefit within the conviction process. With regard to the Appellant's allegation that trial counsel failed to perform as argued above, the Appellant is required to prove by clear and convincing evidence: (1) that a motion to seek medical treatment and a motion for reinstatement of bond would have been granted; and (2) that there was a reasonable probability that the proceedings would have concluded differently if counsel

had performed as suggested, *i.e.*, that the Appellant would not have pled guilty but would have insisted on going to trial. The Appellant has failed to establish either of these factors.

With regard to the Appellant's argument that trial counsel failed to "file or research appropriate motions" to obtain medical treatment, the Appellant fails to identify the type of research trial counsel should have conducted and fails to reveal the "appropriate motion" that should have been filed. Indeed, as noted by the trial court, there is no credible proof in the record that the Appellant was deprived of medical assistance while incarcerated. With regard to trial counsel's failure to seek reinstatement of the Appellant's bond, no proof was developed at the hearing with regard to this issue. The single reference to this issue at the hearing indicates that the Appellant was "in jail on a bond forfeiture" and that a motion to reinstate would have been "difficult." Clearly, trial counsel cannot be faulted for failing to file or pursue a motion which would have been meritless. Accordingly, we conclude these allegations of deficient performance are not established.

## III. Investigative Videos

The Appellant also asserts that trial counsel was ineffective in failing to investigate the facts and circumstances of his involvement in the crimes by failing to view the videotapes of the Appellant's field sobriety tests. He asserts that trial counsel's failure to do so prevented his utilization of possible defenses and led to his acceptance of the guilty pleas. Furthermore, the Appellant asserts that trial counsel was deficient for failing to communicate with him regarding the tapes.

In denying relief upon this ground, the post-conviction court found:

[Trial counsel] was aware of the fact through his discovery processes in General Sessions Court that the video tapes did not exist or had been lost or had been destroyed or whatever. And that he advised [the Appellant] as far back as General Sessions, he thought that the cases could be beat, could be won in trial.

. . . .

Again all those indicate that [the Appellant], at least in my mind, was aware of the deficiency of the State's case, was aware of the potential that his lawyer said he had for possibly winning the case . . . . And he refused to do so because he wanted to go to trial.

Then it's obvious, again, . . . in the fact that his cases were set for trial four different times on four different trial dates . . . .

. . . .

It appears that [the Appellant] was well aware of the problems of the proof in the case and knew that it could be used to his advantage if he decided to go to trial.

. . . .

So I'm satisfied that [the Appellant] fully understood the nature of the facts against him and understood what the potential for winning the case or losing the case was based on the testimony that I've heard.

So I don't think you could say that he did not understand and knew the facts of the cases against him.

Again, we conclude that nothing in the record before us preponderates against the post-conviction court's findings. Trial counsel testified that he investigated the case through the discovery process and discovered that certain video tapes were no longer available. He stated that he informed the Appellant that, in his opinion, the chances of winning at least two of the cases were good. Additionally, the Appellant has failed to produce any proof of what beneficial evidence trial counsel would have found had he further investigated the available videotapes. It was the Appellant's burden to present this proof at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This issue is without merit.

## CONCLUSION

Our review of the entire record affirmatively demonstrates that the Appellant's guilty pleas were made with sufficient awareness of the consequences of the pleas, and, as such, the guilty pleas were voluntarily and knowingly entered. *Mackey*, 553 S.W.2d at 340. Based upon our conclusion that trial counsel was not deficient in his representation of the Appellant, we affirm the dismissal of the Appellant's petition for post-conviction relief by the Shelby County Criminal Court.

_____
DAVID G. HAYES, JUDGE